**HUDSON SALES CORP.**

v.

**WALDRIP.**

No. 14511.

United States Court of Appeals,
Fifth Circuit.

March 5, 1954.

Rehearing Denied April 9, 1954.

Dan Rogers, Thompson, Knight, Wright & Simmons, Dallas, Tex., Richard W. Larwin, Beaumont, Smith & Harris, Detroit, Mich., for appellant.

Claude R. Miller, Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

### HUTCHESON, Chief Judge.

Paragraph one of the complaint, as amended, alleged: "This action is for fraud [1] and, in the alternative, arises under the anti-trust acts of July 2, 1890 and October 15, 1914, as amended, U. S.C. Title 15, Sections 1 to 15",[2] and it was on the basis of these allegations

1. The fraud claim was: that on May 3, 1948, after plaintiff had been since 1945 a distributor of Hudson automobiles, defendant Hudson Sales Corporation, the wholly owned subsidiary of Hudson Motor Car Company and its distributor, advised plaintiff that Hudson Motor Car Company had "elected to go the direct dealer route" and presented him with an agreement, designated as a master sales agreement, and plaintiff, believing he could continue to sell Willys and Packard cars as he was doing, signed the contract; that subsequently during that year an agent of the defendants told plaintiff that he must discontinue selling Philco radios, and, being led to believe that defendant would permit him to continue to sell Willys and Packard cars, plaintiff agreed to drop Philco and did so; that in May, 1949, he was advised that unless he discontinued selling Willys vehicles, he would be cancelled out as a Hudson dealer and that defendants did not intend to continue his contract as such; that in the course of negotiations with defendants, in which plaintiff was told that if he would discontinue selling Willys cars he would be permitted to enter into a new master dealer contract, plaintiff asked if it would be all right if he put forth little effort to sell Willys cars so that Willys would cancel plaintiff out, and the defendants represented to him that if he would follow this course he could continue to act as a Hudson dealer; that these representations were false and known to be false at the time they were made, and, though plaintiff fulfilled his agreement by putting forth little effort to sell Willys vehicles, defendant requested him to cancel Willys out, and because this was not done, an agent of defendant in May 1950, threatened him with cancellation and informed him that his contract would not be renewed when it expired on July 31, 1950, and it was not renewed.

2. The alternative claim was that at the time defendants decided to go and did go the "direct dealer route", they knew that plaintiff was selling Philco radios and Willys and Packard cars, and immediately after plaintiff signed the contract, the defendants began a course of intimidation, threats, and coercion in a conspiracy to restrain the sale of articles manufactured and sold by competing automobile manufacturers, by requiring plaintiff to sell only products manufactured and distributed by them in violation of the Sherman Anti-Trust Act, Sec. 3 of the Clayton Act, and the Robinson-Patman Act, causing plaintiff to lose $10,000 a year from 1948 to the date of the suit. Among the things they did to carry out their conspiracy, they compelled plaintiff to use all his available capital to buy a quota fixed by the defendants so that plaintiff would have insufficient capital to purchase products manufactured by competitors, and in violation of Sec. 3 of the Clayton Act, 15 U.S.C.A. § 14, the defendants in the course of commerce among the states conspired to prepare and present to plaintiff during June, 1949, a contract prohibiting sale of goods, wares, etc. of competitors. It was further alleged: that the effect of such contract was to substantially lessen competition and further to damage plaintiff by depriving him of the right of making profits on the sale of other appliances and automobiles; that, as a part of the conspiracy, defendants on March 30, 1949, conspired to disassociate themselves from plaintiff by not renewing his contract; and that dur-

that plaintiff sued for the damages claimed.

The defendant, Hudson Motor Car Company, the manufacturer of Hudson cars, was not served with summons and did not appear in the cause, and at the close of the trial, the action was dismissed as against it with prejudice to the plaintiff.

The defendant, Hudson Sales Corporation, the distributor answered, denying the charges of fraud and conspiracy and the claim that plaintiff had been damaged.

Upon the issues thus joined, the cause was tried to the court without a jury and, the evidence concluded, the district judge, writing no opinion and making no separate findings of fact and conclusions of law as the basis for entering judgment against the defendant for $75,000 plus $7500 attorneys fees and costs, contented himself with this brief oral statement:

"I find as facts, Gentlemen, that the plaintiff was required, by the Hudson Sales Corporation, and the Hudson Motor Car Co., acting together, through a common ownership and common officers, directors, and employees, to give up the dealing in Willys, and Packard, and the Philco apparatus, and in the place of Philco, putting the Philcos upon the Hudson cars, to use the Hudson apparatus upon Hudson cars.

"I find that the restriction was in violation of the Anti-trust Statute, and that that statute is compensatory and punitive.

"And I find that by reason of that, the plaintiff was damaged in the sum of $75,000.

"And I fix the attorney's fees at $7,500.00, or a total amount of $82,-500.00."

Appealing from that judgment, the defendant is here insisting: (1) that the above statement is not in compliance with Rule 52(a), Federal Rules of Civil Procedure [3] and is wholly inadequate to serve as sufficient findings of fact to support the judgment, and (2) that, if it is sufficient to serve as such findings, the evidence affords no substantial basis for them, and they are, therefore, clearly erroneous.

In support of its first contention that the findings are insufficient, appellant, citing some of the many cases [4] in which judgments have been reversed for violation of this rule, points to the fact that, though plaintiff's complaint charged violations of the Sherman Act, the Robinson Patman Act, and the Clayton Act, the brief statement made by the court did not disclose which section or sections defendant was found to have violated, the wherein of the violation, that is of what the violation consisted, or the basis for the judgment for the damages awarded plaintiff.

In support of its second contention that the findings are clearly erroneous, appellant, citing some of the many cases [5] dealing with suits of this general

ing the years 1948, 1949 and 1950, they conspired to restrain trade by orally exhorting plaintiff to discontinue selling a competing product.

3. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. provides in part:
    "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *."

4. Application of Murra, 7 Cir., 166 F.2d 605; Kelley v. Everglades Drainage Dist., 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed.

1485; Interstate Circuit v. United States, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146; Hubshman v. Louis Keer Shoe Co., 7 Cir., 129 F.2d 137.

5. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311; Atlantic Co. v. Citizens Ice & Cold Storage, 5 Cir., 178 F.2d 453; Times Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Nelson Radio & Supply Co. v. Motorola, 5 Cir., 200 F.2d 911; Kay Petroleum Corp. v. Piergrossi, 137 Conn. 620, 79 A.2d 829, 831; Boro Hall Corporation v. General Motors, 2 Cir., 124 F.2d 822; Standard Oil Co. of California v. U. S., 337 U.S.

nature, which have firmly established the principle that an essential to a private recovery is a showing of a public injury, and that only unreasonable restraints of interstate commerce, restraints which substantially affect competition or which have the purpose or effect of raising or fixing market prices, are condemned under Section 1 of the Sherman Act, points to the complete absence from the evidence of proof that defendant was guilty of any such acts. It points too to the settled construction of Section 2 of the Sherman Act which deals with monopoly and attempts to monopolize,[6] that there must be shown either an actual monopoly or a specific intent to monopolize, neither of which is claimed or proved here. Finally, as to Sec. 3 of the Clayton Act,[7] which appellee in his brief [8] states is the section which the district judge found that the defendants had violated, appellant points out that this section makes illegal only those contracts or sales which tend to substantially lessen competition or create a monopoly and to the complete absence of finding or evidence that anything done by defendant had either of these effects.

Replying to appellant's contention that, viewed as a finding of fact, the court's statement is inadequate to support the judgment, appellee insists that this contention is not a substantial one, first, because Rule 52(a), invoked by appellant, is a technical rule, more honored by the courts in the breach than in the observance, and, second, because it plainly appears from the statement itself that it is completely adequate as a finding of fact.

To appellant's second contention that if the statement is adequate in the sense that there is implicit in it findings as to the essential elements of the violation charged, these findings are clearly erroneous, appellee replies that the record contains conclusive proof that Hudson Motor and Hudson Sales violated Section

293, 69 S.Ct. 1051, 93 L.Ed. 1371; Shotkin v. General Electric, 10 Cir., 171 F.2d 236; Fedderson Motors v. Ward, 10 Cir., 180 F.2d 519; United States v. J. I. Case, D.C., 101 F.Supp. 856; District of Columbia v. Merchants, 83 F.Supp. 995; Fargo Glass & Paint Co. v. Globe, 7 Cir., 201 F.2d 534.

6. Distinguishing between the requirements for showing a violation when the completed act of monopolization is shown and, on the other hand, where the attempt to monopolize is charged, the court, in Times Picayune case, note 5, supra, 345 U.S. at page 626, 73 S.Ct. at page 890, 97 L.Ed. 1277 said;

"While the completed offense of monopolization under § 2 demands only a general intent to do the act, * * * a specific intent to destroy competition or build monopoly is essential to guilt for the mere attempt now charged." (Citing cases.)

7. Section 3 of the Clayton Act—This section provides in part 15 U.S.C.A. § 14:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to * * * make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States * * * on the condition, agreement, or understanding that the * * * purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the * * * seller, where the effect of such * * * sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

8. "Having carefully considered the pleadings, listened to eleven witnesses, and examined some seventy-nine exhibits, the district court found that the antitrust statute had been violated in 'that the plaintiff was required, by the Hudson Sales Corporation, and the Hudson Motor Car Company, acting together, through a common ownership, and common officers, directors, and employees, to give up the dealings in Willys and Packard, and, the Philco apparatus, and in place of Philco, putting the Philcos upon the Hudson cars, to use the Hudson apparatus upon Hudson cars.' (R.217)

"This constitutes a clear finding that by a conspiracy the defendants required the plaintiff not to deal in the goods of competitors."

1 of the Sherman Act and Section 3 of the Clayton Act, by entering into a conspiracy in restraint of trade and commerce among the several states, and unlawfully making contracts and sales pursuant thereto on the condition that the purchasers should not deal in the products of Hudson's competitors.

For the reasons hereafter briefly stated, we disagree with appellee and agree with appellant as to both of its contentions, and we also agree with appellant that the judgment should be reversed and here rendered for it.

■ Section 15, Title 15 U.S.C.A., under the authority of which plaintiff's alternative claim is brought, reads as follows:

"15. Suits by persons injured; amount of recovery. Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

In view of the elements essential to a recovery under this section, as they are stated in it and in the cases cited and discussed in the annotations to it,[9] it is quite clear, we think, that the appellant is right in its contentions: that the district judge has failed to find the facts which must be found if a judgment under Section 15 is to be entered; and that the judgment is subject to reversal for want of adequate findings to support it.

■ Because, however, we are also of the opinion that appellant is right in its second contention that there is no basis, in the evidence and the authorities governing recoveries under Section 15, for findings that there was a conspiracy to restrain trade, a monopoly, an attempt to create a monopoly, or an agreement of the kind prohibited in Section 14, and none for a finding that plaintiff has suffered damages "in his business or property" as a proximate cause of any illegal act of defendant, we will not make the useless gesture of reversing for the absence of findings but will order the judgment reversed and here rendered for defendant.

The written contract, which is set out in the record, contains in it no such agreement as plaintiff charges was made and the statements made orally to and by plaintiff, if made as he testified they were, do not amount to an agreement in violation of the act. Taken most favorably to plaintiff, his evidence amounts to no more than a claim: that Hudson Motor Company and Hudson Sales, its wholly owned subsidiary and agent for distribution of its cars, had decided upon a policy deemed necessary in order to promote and increase sales of Hudson products; that this policy was that no new contracts would be made and no old ones renewed with master dealers, such as plaintiff, who handled other lines except upon a clear showing that they had the capacity, the facilities, and the get-up and know-how to adequately handle the Hudson products along with the others; and that they put this policy into effect with plaintiff by not renewing his contract when they finally concluded that he was not in a position to give, was not giving, and would not give Hudson adequate representation and it would not be to Hudson's best interests to again contract with him. Neither the fixing of the policy which led to this determination nor the determination itself was, under the undisputed evidence in

9.  Vol. 15 U.S.C.A. pages 409 to 523, with particular reference to notes 101, "Violation of antitrust laws prerequisite to action—Generally", 103, "Violation of public rights"; 107, "Injury to plaintiff—Necessity of"; 109, "Personal and public injury distinguished"; 110, "Proximate result of violation"; 112, "Evidence of [Damage sustained]"; 181, "Injury to business or property generally"; and 189, "Public rights, violations of".

this record, in any respect a violation of the antitrust laws. Both were business steps taken for business reasons not for the purpose or with the effect of restraining competition, fixing prices, or otherwise violating the antitrust laws or injuring anyone.

If, without deciding, we should assume that it could be said of these two non-competitive companies, one the wholly owned subsidiary and agent of the other for the distribution of its products, that concerted action by them could constitute a conspiracy in violation of the antitrust laws, but see Nelson Radio & Supply Co. v. Motorola, 5 Cir., 200 F.2d 911, where in a similar situation involving not a corporation and its agent, a wholly owned corporate subsidiary but a corporation and individuals as its agents, we held to the contrary,[10] there is no substantial evidence that what was said and done between plaintiff and defendants constituted the prohibited making of a lease, sale, agreement or understanding with the probable effect of substantially lessening competition or creating or tending to create a monopoly in any line of commerce. What is charged and proven here is no more than was charged in the Motorola case, supra, and was there held by us not to violate Section 3 of the Clayton Act, 15 U.S.C.A. § 14. Further, if we should assume that the proof showed that anything that was said and done amounted to a positive agreement or understanding that plaintiff should not handle products of other automobile makers, there is no showing whatever that such an agreement would probably have or did have the effect of substantially lessening competition or tending to create a monopoly in interstate commerce as forbidden by that section.

It was established, indeed admitted, that when plaintiff gave up the Philco Agency, whether he gave it up as he claims under compulsion or as defendant claims of his own volition, another person took the agency over immediately and there is no proof whatever that his giving up Philco affected either competition or price, or that there were fewer Philcos sold, as a result of the change, than had been sold by plaintiff.

In addition, if it should be assumed that the statement which plaintiff said he had made to defendant, that he would slow down on his Willys sales so that Willys would revoke his agency, was in fact made and would, if carried out, have had the effect of lessening competition, there is no proof whatever that plaintiff in fact did anything to carry out what he said he would do. On the contrary, it is admitted that Willys did not revoke his agency, and it is established by uncontradicted testimony that the buyer of plaintiff's business gave up the Willys agency voluntarily because he found that he could make nothing out of it.

Finally, the only findings that this record would reasonably support are: that, acting on business considerations, defendant determined that plaintiff was too spread out, his efforts too dispersed, to give Hudson the effective representation of master dealer in his territory to which Hudson was entitled; that it did this under its policy, which was not in purpose or effect a violation of any law, to select master dealers who would best serve Hudson's interest; and that, having first endeavored to induce plaintiff to produce more worthwhile results, and having found that plaintiff was unable or unwilling to give it the satisfactory service it was entitled to, defendant did not terminate his contract but at its termination according to its terms simply declined to renew it.

---

10. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; and Timpkin Roller Bearing Co. v. U. S., 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199, are not at all to the contrary. There the corporations were highly competitive and the first head note in Kiefer-Stewart reads, "An agreement among competitors in interstate commerce to fix maximum resale prices of their products violates the Sherman Act."

Plaintiff had no tenure, no right to a renewal of his contract as master dealer. Defendant, on the other hand, had an absolute right either to renew or not to renew it, and the exercise by it of that right did not, it could not form the basis of a suit under Section 15, even if the evidence had shown, which it did not, that the defendant had done so only because plaintiff had refused to give up in the future his other agencies and center his efforts on, and give his undivided attention to, Hudson and Hudson products. Nelson v. Motorola, supra.

Further, even if we could assume in the face of the record showing the contrary, that plaintiff did make a showing of a public violation of Section 14, he would stand in no better position because his proof was wholly devoid of any substantial evidence which would form a basis for finding that he was injured in his business or property as a proximate result thereof.[11]

Reduced to its simplest terms, plaintiff's case comes down to this, that, dissatisfied with the refusal of the defendant to renew the contract and suing primarily upon the ground of fraud and secondarily under the antitrust act, plaintiff has sought in vain to make a cause of action out of the fact that the defendant, after a full trial, became completely dissatisfied with plaintiff's representation of its interests and refused to renew the contract with him as master dealer because, in its opinion, he was not affording adequate representation.

This court, in the Motorola case has discussed and dealt with a situation quite similar to this. Its decision there is in accord with the uniform current of authority that a plaintiff suing under the antitrust acts must prove a violation which produces a public injury, that is a conspiracy or agreement in restraint of trade which substantially affects or lessens competition, raises prices, or attempts to create or creates a monopoly,

and in addition must prove that as a result of such violation, he suffered a private injury "in his business or property" by reason and as the proximate result thereof, and the nature and extent of that injury. The evidence wholly fails to prove such a case in any of its elements. The judgment is Reversed and here Rendered for appellant.

---

11. Northwestern Oil Co. v. Socony–Vacuum Oil Co., 7 Cir., 138 F.2d 967; Turner Glass Corp. v. Hartford Empire Co., 7 Cir., 173 F.2d 49; Maltz v. Sax, 7 Cir., 134 F.2d 2; Shotkin v. General Electric, 10 Cir., 171 F.2d 236.