Victor N. ALEXANDER
v.
The TEXAS COMPANY.
Civ. A. No. 5432.

United States District Court
W. D. Louisiana,
Shreveport Division.
Aug. 22, 1958.

See also, 149 F.Supp. 37.

Malcolm E. Lafargue, Shreveport, La., for plaintiff.

John T. Guyton, Hargrove, Guyton, Van Hook & Hargrove, Shreveport, La., Jack D. Childers, Houston, Tex., A. B. Steed, New York City, for defendant.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

Final Ruling on Pending Motions

As permitted by our opinion of March 1, 1957, 149 F.Supp. 37, and within thirty days thereafter, plaintiff filed an amended and supplemental complaint, consisting of an additional fifteen articles, which have attempted to supply the many deficiencies in his cause of action, under the jurisprudence dealing with the antitrust laws, we had pointed out in our opinion.

Thereafter, defendant immediately renewed its motions, to dismiss and for summary judgment. We have conducted several hearings, and have considered additional briefs, with respect to these new motions, but until now have not ruled finally upon them. Meanwhile, we have repeatedly suggested to plaintiff's counsel that he might further amend and supplement the complaint so as to meet defendant's objections as to its legal sufficiency, if the true facts warranted such action, but he has not seen fit to do so.

Finally, at the last hearing held on July 2, 1958, at which the entire case was reviewed and reconsidered, we were told by plaintiff's counsel, in effect, that he would let his case stand or fall on the complaint and record as now cast, that he had alleged all he could allege and would not amplify what he already had alleged in any respect. Consequently, the case is now in posture for us to pass definitely upon defendant's motions, and this we proceed to do:

## I.

### Price Discrimination

We originally found that Paragraphs 12, 13, 14 and 15 of the original complaint, in which plaintiff sought $1,818.-18 (untrebled) damage based upon defendant's alleged price discrimination, were legally insufficient since plaintiff failed to aver any of the three essential elements of a private treble damage action: (1) a violation of the antitrust laws, (2) injury to his business or property proximately caused by such violation, and (3) measurable damage. Hudson Sales Corp. v. Waldrip, 5 Cir., 1954, 211 F.2d 268, 274 (certiorari denied 348 U.S. 821, 75 S.Ct. 34, 99 L.Ed. 648); Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 1954, 214 F.2d 891, 893 (certiorari denied 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715). The amended complaint fails to overcome any of these fatal infirmities:

### 1.

*The amended complaint does not charge that Texaco committed an unlawful price discrimination since ultimate facts are not alleged showing that Texaco's price differences resulted in an anti-competitive effect proscribed by the Robinson-Patman Act.*

■ As we noted in our original opinion, the Robinson-Patman Act, 15 U.S.C.A. § 13 et seq., condemns only those price discriminations which have one or more of three anti-competitive consequences. The effect must be (1) substantially to lessen competition, or (2) tend to create a monopoly or (3) to injure, destroy or prevent competition among sellers, buyers or their customers. In passing upon the sufficiency of plaintiff's original complaint, as to this claim, we said that it is "perfectly clear that the results of defendant's alleged price discrimination did not fall within the first or second of these categories" [149 F.Supp. 41] and added:

"It is possible, although not shown by the complaint, that defendant's alleged price discrimination may have come within the third category by injuring, destroying or preventing competition between plaintiff and the twelve dealers who are said to have been given cheaper prices. Plaintiff has not alleged that this was so.

"All he has done is to level a broad charge against defendant that it was guilty of 'price discrimination'—a mere legal conclusion—in that he had to pay more for gasoline than did the twelve other Texaco dealers named, but he does not allege in detail, as he must, how or to what extent the difference in price injured, destroyed or prevented competition between his business and that of any or all of the favored dealers.

\* \* \* \* \* \*

"In addition, plaintiff does not attempt to define, as he must, what he contends is the so-called Shreveport-Bossier City trade area or to show, as he must, that at the time of the 'discrimination', he actually was in competition with any one or all of the favored dealers, most of whose businesses were located miles away from his station. The mere possibility that there was competition between his business and theirs is not enough. Such competition must be clearly shown. Enterprise Industries, Inc., v. Texas Co., supra. [2 Cir., 240 F.2d 457, certiorari denied 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed. 2d 914.] For aught that appears, since his station was located in a residential district in Shreveport, it might have served, in its usual business, only a relatively small area in its immediate vicinity, without actually being in true competition with any of the favored dealers." [1]

Article 29 of the amended complaint avers:

---

1. We thus applied the well-established maxim that a price difference cannot have any effect upon the seller's customers unless those customers compete with one another. Federal Trade Commission v. Morton Salt Co., 1948, 334

"That defendant's price discrimination not only injured, destroyed and prevented competition between plaintiff and the dealers named in Article 12, who were given cheaper prices, but injured, destroyed and prevented competition between plaintiff and other major service station dealers in said Caddo-Bossier trade area."

But this Article still does not allege in detail, as plaintiff must, how or to what extent the difference in price injured, destroyed or prevented competition between his business and that of any or all of the favored dealers. Rather, plaintiff alleges only generalities and legal conclusions, in the language of the statute, and thus fails to state a claim for damages, on account of price discrimination, upon which relief may be granted. National Used Car Market Report, Inc., v. National Auto Dealers' Ass'n, D.C.1951, 108 F. Supp. 692, 694; Lipson v. Socony-Vacuum Corp., 1 Cir., 1935, 76 F.2d 213, 217.

So also, contrary to our admonition that plaintiff must define what he contends is the so-called Shreveport-Bossier City trade area and show that, at the time of the "discrimination", he actually was in competition with any one or all of the favored dealers, most of whose businesses were located miles away from his station, plaintiff simply alleges the legal conclusions, at Article 31 of his amended complaint:

"That plaintiff was during all of said time in direct competition with all of the favored dealers, as well as, *all other major service station dealers*, who were forced to become engaged in said price war, in the Caddo-Bossier trade area which encompassed an area of several miles." (Emphasis supplied.)

U.S. 37, 45, 68 S.Ct. 822, 92 L.Ed. 1196; Balian Ice Cream Co. v. Arden Farms Co., 9 Cir., 1955, 231 F.2d 356, certiorari denied 1956, 350 U.S. 991, 76 S.Ct. 545, 100 L.Ed. 856; Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 1949, 176 F.2d 1, 10, certiorari denied 1950, 338 U.S. 948, 70 S.Ct. 486, 94 L. Ed. 584.

Aside from the fatal infirmity inherent in the conclusory character of this allegation, plaintiff's claim that he was in competition with every other "major service station dealer in the Caddo-Bossier trade area which encompassed an area of several miles" is ridiculous,[2] e.g., plaintiff certainly was not "in competition" with other stations located 5 to 10 miles away from his station, on different roads and highways, drawing their business from transients, or customers residing in their immediate neighborhoods.

2.

*The amended complaint does not, and could not, allege ultimate facts showing injury to plaintiff's business or property proximately caused by defendant's alleged violation of the Robinson-Patman Act.*

As recent Fifth Circuit decisions make clear, Section 4 of the Clayton Act, 15 U.S.C.A. § 15, strictly confines a private suitor's cause of action to one who "shall be injured in his business or property" by the claimed antitrust violation. Nelson Radio & Supply Co. v. Motorola, 5 Cir., 1952, 200 F.2d 911, certiorari denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356; Waldrip, supra. Therefore, in order to recover on his price discrimination claim, plaintiff must allege and prove that he suffered damage as a proximate result of an infraction of the Robinson-Patman Act by defendant.

Plaintiff's amended complaint still makes no factual allegations that he sustained any specific loss of business to the 12 allegedly favored Texaco dealers. To the contrary, he is content to make the generalized, unsupported conclusion in Paragraph 32 that "he lost customers to other service station deal-

2. See Hillside Amusement Co. v. Warner Bros. Pictures, 2 Cir., 1955, 224 F.2d 629, 630, upholding the rejection of identical conclusory statements on the issue of competition in a treble damage action charging discrimination in violation of the Robinson-Patman Act.

ers who received assistance from the defendant and the other major oil companies." Enterprise Industries, Inc., v. Texas Co., 2 Cir., 1957, 240 F.2d 457 (certiorari denied 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914), expressly rejects the notion that a service station plaintiff, like Alexander, meets his burden of proving damages by simply stating that "he lost customers". There plaintiff advanced the naked, non-factual conclusion that it had "lost some customers" to Texaco dealers who were allegedly favored with lower prices. Speaking for the Second Circuit, Judge Learned Hand said that the plaintiff must support his claimed loss of business with "reliable figures".

Nor does plaintiff's amended complaint take into account any losses which may have occurred by reason of his customers patronizing the many other service stations participating in the general price war. Indeed, the amended complaint now emphasizes that plaintiff "lost customers" to "other service station dealers who received assistance from the defendant *and the other major oil companies*". For aught that appears, if, *arguendo*, plaintiff actually lost the sale of, say, 1,000 gallons of gasoline, he could have lost 20 gallons to the 12 Texaco dealers and the remaining 980 gallons to the other 200 (plus) service station dealers in the Caddo-Bossier trade area (all of whom he avers were in competition with him under Paragraph 22 of his amended complaint).

Nor, under the rationale of Enterprise, does plaintiff make any attempt, by "reliable figures" or otherwise, to deduct from his alleged gross loss "what added profit he may have got" by passing on to his customers all of defendant's alleged price discriminations[3] and by continuing to sell his gasoline at pre-price war margins of profit, while the 12 allegedly favored Texaco dealers who received Chicago Plan assistance were selling their gasoline at lower margins of profit.

There is still another serious defect in plaintiff's price discrimination claim which is irremediable. Assuming that defendant committed unlawful price discrimination, plaintiff must still show that Texaco's price differences were the *proximate cause* of a diversion of business from him to the 12 preferred Texaco dealers. But it is manifest that even if there was such a diversion—and the allegations of the complaint, as we have seen, do not reflect, specifically or otherwise, that such diversion occurred—the cause of such diversion was not Texaco's price differences but rather plaintiff's own insistence, as reflected in the record of another antitrust case passed upon by this Court, upon selling his gasoline at prices higher than those of the 12 allegedly favored Texaco stations. It is perfectly clear from that record, and plaintiff's own testimony therein, that if he had received Chicago Plan assistance from Texaco, he would nonetheless have maintained his pre-price war prices without regard to those charged by any other Texaco dealer. Both the amended complaint and plaintiff's sworn testimony in Louisiana Petroleum Retail Dealers, Inc., v. Texas Company, which we judicially notice, make it abundantly plain that, as an active participant in the Caddo-Bossier Service Station Association, plaintiff was not only committed to, and adhered to, that association's conspiratorial policy of maintaining pre-war gasoline prices and margins of profit during the price war, but, in league with one or two association officials, he actually fathered such unlawful conspiratorial scheme, D.C.W.D.La.1956, 148 F. Supp. 334. It necessarily follows that Texaco's granting or withholding of assistance had nothing whatever to do with plaintiff's claimed decline in gallonage. In short, it was *plaintiff's own pricing policy*, not defendant's that occasioned

3. As stated in Wolfe v. National Lead Co., 9 Cir., 1955, 225 F.2d 427, 433, certiorari denied 1955, 350 U.S. 915, 76 S. Ct. 198, 100 L.Ed. 802: "If appellants did not absorb such increase in price but passed it on to their customers, they could not recover in a treble damage action brought under the antitrust act."

any loss of gallonage he allegedly suffered.

### 3.

*Plaintiff still seeks to apply an erroneous rule of "automatic damages".*

Apart from the numerous fatal defects in his amended complaint discussed above, plaintiff appears determined to use the price differences as an automatic measure of damages, despite the fact that we—following the rationale of the Enterprise case—expressly rejected this fallacious theory in dismissing his original complaint.

 In light of all this, it becomes apparent that in his price discrimination claim plaintiff has failed to allege a single one of the three conjunctive elements which—as stated by the Fifth Circuit in Waldrip, supra, and in Kinnear-Weed, supra—are the essential ingredients of such an action:

(1) an unlawful price discrimination;

(2) injury to plaintiff's business or property proximately caused by such antitrust violation; and

(3) measurable damage.

Therefore, defendant's motion to dismiss such claim, now treated as a motion for summary judgment (Rules 12(b) and 56, 28 U.S.C.A.), should be, and is, finally sustained.

### II.

### Conspiratorial Price-Fixing

██ We originally found that Paragraph 16 of the complaint, based upon defendant's claimed conspiratorial price-fixing with the 12 allegedly favored Texaco dealers, did not charge a violation of the Sherman Act for several reasons, including these:

1. No facts were alleged to show that an unlawful "conspiracy" existed; and

2. No facts were alleged to show that the "public interest" was injured as the result of such claimed conspiracy.

Careful study of the original and amended complaints shows that they also fail to allege facts showing that plaintiff was injured in his business or property as the *proximate result* of Texaco's alleged conspiratorial conduct.

### 1.

*The allegation that defendant engaged in an unlawful conspiracy in league with 12 Texaco dealers is a mere legal conclusion and insufficient in law to state a claim upon which relief can be granted.*

██ We found the conspiracy allegation of the original complaint to be inadequate on the authority of the Fifth Circuit's recent decisions in Motorola, supra, and Crummer Co. v. Du Pont, 5 Cir., 1955, 223 F.2d 238, under which plaintiff is required to plead ultimate facts showing (a) the *details* of such price-fixing conspiracy, (b) its *object* and (c) its *accomplishment*. His amended complaint, like the original pleading, utterly fails to meet this test. Indeed, a simple comparison of the allegations of the two complaints clearly discloses that plaintiff has not added a single factual detail of substance to his original charge.

Paragraph 12 of the original complaint recited that Texaco granted the 12 allegedly favored dealers discounts and rebates "in order to fix maximum prices" and decrease their profit margins; and Paragraph 16 averred that plaintiff was injured "by reason of defendant's fixing a maximum retail price of gasoline in concert and conspiracy with other retail dealers". Paragraphs 26 and 37 of the amended complaint say precisely the same thing in more words, namely, that defendant gave the 12 Texaco dealers allowances and rebates on the condition that they would adhere to the resale prices established by Texaco. This is a classic example of a distinction without difference.

In Black & Yates v. Mahogany Ass'n, 3 Cir., 1941, 129 F.2d 227, 231, 148 A.L.R. 841 (certiorari denied 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539)—cited with approval by Judge Borah in Motorola, supra—the Third Circuit said:

"The views just expressed make it unnecessary for us to elaborate upon plaintiffs' failure to state a cause of action under the Sherman or Clayton Acts. We quite agree with the learned district judge in that respect. The vital allegations in such an action are similar to those in any civil conspiracy case. A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, *the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment. The plaintiffs have pleaded none of these facts. Neither the date of the alleged conspiracy nor its attendant circumstances are set forth. Nor is it averred who made the statements, where, when, or to whom.*" (Emphasis added.)

In the Third Circuit's language, plaintiff Alexander has pleaded none of the facts:

"constituting the conspiracy, its object and accomplishment. \* \* \* Neither the date of the alleged conspiracy nor its attendant circumstances are set forth."

Nor is it alleged where and when each of the claimed conspiratorial acts occurred and who participated therein on behalf of the alleged conspirators. 6 Toulmin's Anti-Trust Laws, p. 523, says that:

"it is obvious that a complaint charging a conspiracy in violation of the anti-trust laws generally must contain a recital of numerous acts and circumstances."

Without laboring the point, a mere glance at the complaints involved in the Fifth Circuit's recent Motorola, Crummer and Kinnear-Weed decisions (all supra) will show that each of such complaints was vastly more detailed with facts charging conspiracy than that here involved, but each was nonetheless found legally insufficient.

## 2.

*The allegation that defendant's allegedly conspiratorial price-fixing affected the "public interest" is insufficient as a matter of law.*

In seeking to show that defendant's claimed conspiratorial price-fixing affected the "public interest", plaintiff charges in Article 33 of his amended complaint:

"That the public interest was injured as a direct result of defendant's illegal and unlawful acts, in that, the price war started and created by defendant caused the independent dealers to raise their prices within two or three cents below the prices of the major dealers, that is to say, *that as of now*, the independent service station dealers are selling their gasoline for approximately seven or eight cents a gallon higher than before the price war, and the public is being penalized (by) said higher prices." (Emphasis ours.)

This is in apparent contradiction of Article 28, which reads:

"That as result of said price war the prices of gasoline in the Caddo-Bossier trade area were reduced as much as ten cents below the former competitive price range which made it impossible for these dealers, such as your plaintiff, who did not agree or join in with said conspiracy to be forced out of business; furthermore, an immediate and direct result of said conspiracy was to force the independent dealers to reduce their prices to such a low level that it would be impossible for them to survive the monopoly created by the defendant, and they were compelled to sell their gasoline for prices at or below the cost to them."

While the allegations of Article 33 are barren of factual support and relate, if anything, to the price structure adopted by so-called "independent service station dealers" long subsequent to Novem-

ber 18, 1955 (when plaintiff ceased being a Texaco dealer) and which price structure was adopted as the admitted result of the general price war (as distinguished from defendant's alleged conspiracy with the 12 Texaco dealers), the short answer, as a matter of law, to plaintiff's allegation is that it misconstrues the nature of the "public injury" concept as recently explained by Judge Rives in Kinnear-Weed, supra [214 F.2d 893]:[4]

> "Public injury alone justifying the three fold increase in damages and being an indispensable constituent of a claim for violation of the antitrust laws, *a general allegation of such injury is not sufficient.* It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by *unduly restricting the free flow of interstate commerce.*" (Citing cases.) (Emphasis supplied.)

Assuming, *arguendo*, that Texaco did participate in a price-fixing conspiracy, it is not alleged that interstate commerce was affected one iota. Gasoline was, and is, as available to the public as it ever was. The flow of gasoline in interstate commerce was not diminished in the slightest. Accordingly, it would be ridiculous to say that Texaco's conduct "unduly restricted the free flow of interstate commerce", within the rationale of Kinnear-Weed.

### 3.

*The amended complaint does not, and could not, allege ultimate facts showing injury to plaintiff's business or property proximately caused by defendant's alleged conspiratorial price-fixing.*

 What we already have said respecting plaintiff's burden in showing that he was injured as the result of defendant's alleged unlawful price-dis-

crimination applies with equal force here. Whether the claimed injury is the result of price-discrimination or conspiratorial price-fixing, the rule respecting proximate cause is the same. To summarize:

1. The amended complaint is legally insufficient because it does not show, by ultimate facts or otherwise, that the 17,786 gallons of gasoline which plaintiff allegedly failed to sell was diverted, in whole or part, to the 12 Texaco dealers who are said to have been defendant's co-conspirators. Quite to the contrary, plaintiff freely admits in Paragraph 30 of his amended complaint "that as a result of defendant's conspiracy and illegal and unlawful acts, * * * he was unable to meet the lower prices of the other major service station dealers thereby causing him to lose his business"; and, for aught that appears, every drop of the claimed 17,786 gallons of gasoline was lost to service station operators other than the allegedly favored 12 Texaco dealers;

2. And, both the amended complaint and plaintiff's testimony in the 1956 injunction suit (Civil No. 5431) make it clear that, irrespective of Texaco's alleged conspiratorial conduct in fixing the prices of the 12 Texaco dealers at levels lower than those charged by plaintiff and without regard to the prices charged by such dealers, plaintiff was committed to, and adhered to, another and much broader conspiratorial scheme and agreement which required him to sell his gasoline at pre-price war prices and margins of profit. This was a business decision by plaintiff as to the best way to maximize his profits. If plaintiff lost any business, such was thus occasioned by his own pricing policy, not defendant's.

In light of the foregoing, the motion to dismiss plaintiff's claim based on defendant's alleged conspiratorial price-fixing, now treated as a motion for summary judgment (Rules 12(b) and 56), must be, and is, finally sustained.

---

4. Judge Rives recently reaffirmed the necessity for a showing of "public injury" in Rogers v. Douglas Tobacco Board of Trade, 5 Cir., 1957, 244 F.2d 471, 483.

### III.

### Unlawful Cancellation of Lease

▪ In originally sustaining defendant's motion for summary judgment directed to Paragraph 18 of plaintiff's original complaint which sought $12,000 (untrebled) damage based on defendant's termination of plaintiff's lease in alleged violation of the Sherman Act, we held that defendant's conduct did not breach either Section 1 or Section 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2; and in any event, plaintiff had not alleged or shown (either in his pleading or in his deposition) any recoverable damage proximately resulting from such alleged antitrust violation. The amended complaint does no better:

#### 1.

*The amended complaint charges no antitrust violation.*

Paragraph 35 of the amended complaint says:

> "That as a direct result of defendant's illegal and unlawful acts and as part of its conspiracy to lessen competition, create a monopoly, and to injure, destroy or prevent competition among sellers or their customers, it cancelled plaintiff's lease without cause or justification and directly prevented him from disposing of his station equipment and inventory."

Likewise, Paragraph 37 states, in part:

> "that as a direct result of plaintiff's refusal to sell at prices fixed by de-

fendant his lease was cancelled and he was forced out of business."

A recapitulation of the reasons upon which we rested our conclusion that Texaco's termination of plaintiff's lease was entirely lawful projected against the above-quoted allegations quickly discloses that plaintiff's position is still untenable:

*Reason 1*: Texaco's refusal to deal did not violate Section 1 of the Sherman Act because a *unilateral* refusal to deal is not inhibited by such section (Motorola, 200 F.2d at page 915). Section 1 applies only where there is a "contract, combination * * * or conspiracy" —either of which requires *bilateral* action (Motorola, at page 914) by two or more persons who are competitors (Waldrip, 211 F.2d at page 273, footnote 10; Times-Picayune Publishing Co. v. United States, 1953, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Kiefer-Stewart Co. v. Joseph E. Seagram, 1951, 340 U.S. 211, 213, 71 S.Ct. 259, 260, 95 L.Ed. 219). We said in the instant case that "it would be ridiculous to characterize defendant (Texaco) as a 'competitor' of its retail dealers, such as those who allegedly were favored here."[5] So also, even a concerted refusal to deal by true competitors violates Section 1 only when it unduly affects interstate commerce because refusals to deal are not *per se* violative of the law (Kinnear-Weed, supra; Interborough News Co. v. Curtis Publishing Co., 2 Cir., 1955, 225 F.2d 289, 300). We said in the instant case that "there is no allegation, or other showing, that (Texaco's) lease

---

5. An article in the current issue of Harvard Law Review "Concerted Refusals To Deal Under the Federal Antitrust Laws", 71 Harv.Law Rev. 1531, says that:

"A concerted refusal to deal is an agreement by two or more persons not to do business with other individuals, or to do business with them only on specified terms. An agreement between A and B that A will not deal with C is not such a group boycott (or concerted refusal to deal) since there is not the requisite refusal by two or more parties to deal with another. Cf. Packard Motor Car Co. v. Webster Motor Car Co. [100 U.S.

App.D.C. 161], 243 F.2d 418, cert[iorari] denied 1957, 355 U.S. 822 [78 S.Ct. 29, 2 L.Ed.2d 38]."

Precisely in accord is Schwing Motor Co. v. Hudson Sales Corp., D.C.Md.1956, 138 F.Supp. 899, affirmed 4 Cir., 1957, 239 F.2d 176, certiorari denied 1957, 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38, cited by the Court in its opinion dismissing the original complaint in the instant case. Under this rationale, defendant and a Texaco dealer could not engage in an unlawful boycott of a second dealer since only Texaco does business with such dealer.

cancellation affected interstate commerce in any degree."

*Reason 2*: A unilateral refusal to deal constitutes a violation of Section 2 of the Sherman Act where an actual monopoly or a specific intent to monopolize has been properly pleaded and proved (Waldrip, 211 F.2d at page 271). However, in the case at bar, there is no adequate allegation of a monopoly or intent to monopolize anywhere in the complaint, and the documents on record show that such a charge would not be true, even if properly alleged.

Plaintiff's amended complaint does not, and could not, attempt to overcome these fatal defects. Here again, these defects are inherently fatal.

### 2.

*Plaintiff has not alleged any recoverable damage proximately caused by the claimed Sherman Act violation.*

We previously stated:

"Finally, plaintiff has not alleged any recoverable damage proximately resulting from this alleged antitrust violation. The damages he claims, as shown by his deposition, are computed on the basis of alleged profits he anticipated realizing through continued operation of the service station over a three-year period. Necessarily, this assumes a legal right which did not exist, for by the terms of the lease defendant legally could have cancelled it at the end of any lease-year, as was done. Consequently, the damages he claims for this are purely speculative and are not founded upon any enforceable right. Cf. Goodman & Son v. United Lacquer Manufacturing Co., D.C.Mass., 81 F.Supp. 890, 893."

 Plaintiff still urges the same rejected theory of damages in his amended complaint. Hence, Texaco's motion for summary judgment directed to this claim should now be, and is, finally granted.

## IV.

### Prevention of Stock and Equipment Sale

 In sustaining defendant's motion for summary judgment directed to Paragraph 19 of plaintiff's original complaint which sought $6,356.80 (untrebled) damage based on Texaco's alleged wrongful acts in inducing a "prospective buyer" not to purchase plaintiff's service station stock and equipment in alleged violation of the Sherman Act, we held that defendant's conduct did not contravene either Section 1 or 2 of the statute for these reasons:

(a) Section 1 was not violated because that section requires concerted action by competitors, which was not the situation here. Either Texaco was acting as plaintiff's agent in the transaction complained of—in which event Texaco's acts were plaintiff's own acts—or Texaco was acting as the prospective buyer's (Ray Stump's) agent—in which event there was no conspiratorial concerted action, by competitors or otherwise, since a principal cannot conspire with his agent;

(b) Section 1 was not violated for the additional reason that, if anything, Texaco's acts constituted simply an effort to interfere in the consummation of a "prospective" contract (not even in being) for the sale of goods (which had long since ceased to be in interstate commerce if, indeed, they were ever a part of such commerce); and

(c) Section 2 was not violated since Texaco was not a monopolist nor did it have any intent to monopolize the service station equipment business in the Shreveport-Bossier City area or otherwise.

Paragraph 36 of the amended complaint virtually word for word reiterates this specious claim, which like plaintiff's other claims, involves no violation whatsoever of the antitrust laws; it is "purely a private quarrel * * * and there is not the slightest basis for the exercise of the court's jurisdiction", Klor's, Inc., v. Broadway Hale Stores, 1956 Trade Cases 68,495 (N.D.Cal., 1956), affirmed

9 Cir., 1958, 255 F.2d 214.[6] Accordingly, defendant's motion for summary judgment directed to this claim should be, and is, finally sustained.

For these reasons, all of defendant's motions are granted, and the suit will be dismissed. This makes it unnecessary that we pass upon defendant's objections to plaintiff's interrogatories or request for admissions, although we believe all of the objections are valid. Present proper decree.

---

6. The Ninth Circuit's opinion was written by Judge Stanley N. Barnes, who headed the Justice Department's Antitrust Division from 1953–1956. Relying extensively upon decisions of the Fifth Circuit, his opinion is illuminating as to the basic principles applicable to treble damage actions, particularly the necessity for a showing of "public injury".