Joseph J. BROUSSARD

v.

SOCONY MOBIL OIL COMPANY, Inc., et al.

Civ. A. No. 8817.

United States District Court
W. D. Louisiana,
Lafayette Division.

Jan. 23, 1964.

Simon & Trice, Phil Trice, Lafayette, La., for plaintiff.

Liskow & Lewis, W. M. Hall, Jr., Lake Charles, La., and Charles F. Rice, New York City, Charles B. Wallace and Robert Fox, Dallas, Tex., for Socony and Mobil Oil Co.

PUTNAM, District Judge.

Plaintiff alleges jurisdiction under the antitrust laws, 15 U.S.C.A. §§ 1 through 16, and 28 U.S.C.A. §§ 1331 through 1333. The plaintiff charges Socony Mobil Oil Company, Inc., and Mobil Oil Company "or Mobil Oil Corporation", with having cancelled a service station lease entered into with him on February 13, 1961 because of his refusal to cut the retail price of gasoline by 2¢ per gallon as suggested by defendant and to follow the "marketing programs" urged upon him by defendant for the sale of various accessories such as tires, batteries, etc., manufactured by other companies but distributed by defendant.

Socony Mobil has filed motions to dismiss for failure to state a claim and alternatively for summary judgment. Mobil Oil Corporation has moved for summary judgment on the ground that it has no assets and does not transact business in Louisiana.

On the basis of the uncontradicted affidavit in the file, it is apparent that Mobil Oil Corporation should be dismissed from this suit, and its motion for summary judgment is granted.

Mobil Oil Company is merely a department or division of Socony Mobil, the latter being the sole defendant remaining in the suit.

We have concluded that the motion for summary judgment filed by Socony Mobil must also be sustained.

At the same time as the present suit was filed counsel representing this plaintiff filed two similar complaints, No. 8794 of our docket, Meus LeBlanc v. Continental Oil Company, and No. 8816, Lee Roy Guidry v. Continental Oil Company, also in the Lafayette Division. Lengthy briefs, with copious citation of authorities were filed by all parties, depositions and affidavits are on file in each case, as a result of which our decision of these issues has been delayed because of the study required by the voluminous filings in the three records, which was interrupted frequently and for long periods while the Court was occupied with the trial of other cases.

Plaintiff alleges that the defendant's insistence upon the price reduction in his retail sales of gasoline was "due to defendant's desire and intent to run the so-called 'independent oil companies' out of business" and that similar demands had been made upon many station operators in the same area, and that other major oil companies including Continental Oil Company, are making the same demands upon the operators of their stations, and that "said major oil companies are engaged in a combination, if not a conspiracy, to reduce competition and in restraint of trade, contrary to the provisions of the Sherman and Clayton Acts, and that defendants were engaged and combined illegally in both horizontal and vertical combination, conspiracy and price fixing and rigging in these respects." These allegations are upon information and belief.

He further avers that his refusal to follow defendant's "marketing program" in that he stocked other merchandise than defendant's "tie-in" or "sponsored" products, was additional cause for his being put out of business by defendant,

which was likewise a violation of the federal statutes.

He seeks treble damages totalling $114,000.00 for loss of profits for five years at $600.00 per month, $30,000.00 for good will valued at $10,000.00 and attorneys fees of $25,000.00. The complaint further recites that the goods and products of defendant were in interstate commerce, and that his sales were in part to persons in interstate travel.

We first consider the question of termination of plaintiff's lease. The documents attached to plaintiff's petition as Exhibits "A" and "B", the lease and dealer sales agreement, are relied upon by plaintiff as establishing the proposition that the lease could not be terminated except upon 30 days written notice. The lease expired by its own terms on February 12, 1962, which is the date that defendant took possession of its station from plaintiff. Plaintiff argues that since the sales agreement was executed contemporaneously therewith, the provisions of the sales agreement, which provide for a thirty-day notice of termination by either party, should be read into the lease. We not agree with this interpretation of the contracts. They are separate instruments. The lease contains no reference to any consideration other than the rental specified. It specifically excludes any other modification or amendment unless in writing in paragraph 15. The printed portion of the lease form providing for a 30-day notice for cancellation of that agreement was deleted, leaving no doubt as to the intention of the parties. The provision of Article 2684 of the LSA–Civil Code relative to the term of the lease are explicit, viz:

"The duration and the conditions of leases are generally regulated by contract or by mutual consent."

Article 2686 further provides:

"The parties must abide by the agreement as fixed at the time of the lease. *If no time* for its duration has been agreed on, the party desiring to put an end to it must give notice * * *." (Emphasis supplied)

There was, then, no legal right in plaintiff to the continued occupancy of the leased premises beyond February 12, 1962, and in cancelling the lease defendant did only what it had a legal right to do. But plaintiff maintains that the refusal to renew the lease was used by defendant as a coercive measure to bring about compliance with its demands for a price reduction and an adherence to its marketing program. We must, then, consider the acts alleged against defendant in order to determine whether they constitute prohibited acts under the antitrust laws.

An analysis of the complaint, which does not specify which sections of the law plaintiff maintains were violated, leaves us with the conclusion that the only possible violations charged are in respect to 15 U.S.C.A. § 1, the Sherman Act, and 15 U.S.C.A. § 14, the Clayton Act.

The case of United States v. Colgate & Company, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), first laid down the principle that the seller was privileged "to deal with anyone for reasons sufficient to himself", which authorized a refusal to sell to a customer who refused to adopt the seller's suggested retail price. This decision, however, has been narrowed by subsequent decisions of the Court, notable among which are United States v. Parke-Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), and Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1922). But Parke-Davis did not, in our opinion, completely emasculate the Colgate doctrine. There, it was found that the refusal to deal was itself part of a concerted plan in restraint of trade within the statutory prohibitions, whereby the manufacturer used the refusal to deal with its wholesalers, "in order to elicit their willingness to deny Parke Davis products to retailers and thereby help gain the retailers' adherence to its suggested minimum retail price." This use of wholesalers created a *combination*

to maintain retail prices, which was a violation of the Sherman Act. See House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2 Cir. 1962), for a more recent discussion of unilateral refusal to deal.

■ The situation presently before us is not parallel. While the broad allegations of the petition set forth above as to a combination and conspiracy with other major oil companies, including Continental Oil Company, against the public interest, are themselves insufficient under the rules of pleading in such cases to support this claim, Kinnear-Weed Corp. v. Humble Oil & Ref. Co., 214 F.2d 891, 893 (5 Cir. 1954), cert. denied 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715; Crummer Co. v. Du Pont, 223 F.2d 238, 244 (5 Cir. 1955); Bader v. Zurich Gen. Accident & Liability Ins. Co., 12 F.R.D. 437 (S.D.N.Y.1952); there is in this record no evidence whatsoever that such was or might be the case here. Plaintiff's affidavits state no facts from which such a conspiracy or combination might be even inferred. Defendant's denials thereof and the statements by defendant's agents setting forth the reason for termination of plaintiff's contracts stand uncontradicted. While his failure to follow defendant's marketing program, and to reduce his prices to meet competition on the retail market (brought about by the introduction of Gulftane gasoline by Gulf dealers in the area) undoubtedly played some part in the defendant's decision, other and valid reasons are given as well, which are admitted by plaintiff. We refer, of course, to the shaky financial position in which plaintiff found himself and the fact that several of the checks given by him to defendant were returned for insufficient funds, and that the station was being renovated and reconstructed.

Search this record as we may, we find no facts alleged or supported by affidavit to sustain a showing of a violation of public rights, necessary to maintain an action for treble damages under 15 U.S. C.A. § 15.

As stated by Chief Judge Dawkins in Alexander v. Texas Co., 149 F.Supp. 37 (W.D.La.1957):

"It is clear that a simple "refusal to deal" is not proscribed by Section 1 of the Sherman Act. Times-Picayune Publishing Company v. United States, 345 U.S. 594, 625, 73 S.Ct. 872, 97 L.Ed. 1277; United States v. Colgate & Company, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 200 F.2d 911, 915, certiorari denied 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356. A unilateral "refusal to deal" always is permissible except where actual monopoly, or intent to monopolize, exists, Nelson Radio & Supply Company v. Motorola, Inc., supra; Hudson Sales Corporation v. Waldrip, 5 Cir., 211 F.2d 268, certiorari denied 348 U.S. 821, 75 S.Ct. 34, 99 L.Ed. 648; and a bilateral refusal is prohibited only where there is concerted action by those who are true "competitors". Hudson Sales Corporation v. Waldrip, supra; Times-Picayune Publishing Company v. United States, supra; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219. It also must be shown that such concerted, or bilateral, refusal unduly affects interstate commerce. Interborough News Company v. Curtis Publishing Company, 2 Cir., 225 F.2d 289. It would be ridiculous to characterize defendant as a "competitor" of its retail dealers, such as those who allegedly were favored here; and there is no allegation, or other showing, that the lease cancellation affected interstate commerce in any degree.

"It is only where an actual monopoly or a specific intent to monopolize has been properly pleaded that a unilateral refusal to deal constitutes a violation of Section 2 of the Sherman Act. Nelson Radio & Supply Company v. Motorola, Inc., supra; Hudson Sales Corporation v. Wald-

rip, supra. There is no adequate allegation of a monopoly or intent to monopolize anywhere in the complaint, and the documents on record show that such a charge would not be true, even if properly alleged." (149 F.Supp. pp. 43, 44)

We feel that the foregoing correctly and succinctly summarizes the law which governs here. See also Myers v. Shell Oil Co., 96 F.Supp. 670 (S.D.Cal.1951).

As to the "tying" aspect of plaintiff's suit, it is clear from his own testimony that there was no agreement by him to handle only the accessory items distributed by defendant. As a matter of fact, he did handle other products and was free to do so, although this was discouraged by defendant and its employees. This is not a prohibited "tying" arrangement as we view the statutes and jurisprudence thereunder.

For the foregoing reasons, defendant's motion for summary judgment is sustained. Judgment dismissing this suit should be submitted for signature.