**MALTA MANUFACTURING COMPANY,**
Plaintiff,

v.

**Fred C. OSTEN, Sr., and A. R. B. Window Sales Company, Defendants.**

**Civ. A. No. 21913.**

United States District Court
E. D. Michigan, S. D.

March 9, 1963.

Strauch, Nolan & Neale by William A. Strauch and John D. Nies, Washington, D. C., and Robert E. Childs, Detroit, Mich., of counsel, for plaintiff.

Barthel & Bugbee, by Willis Bugbee, Detroit, Mich., for defendants.

McCREE, District Judge.

This is an action for declaratory judgment brought by Malta Manufacturing

Company to declare invalid all claims of defendants' Patent No. 2,903,736 and to declare all claims of defendants' Patent No. 2,903,736 not infringed by plaintiff. Plaintiff also seeks relief from asserted violation of the antitrust laws by defendants, acts of unfair competition and patent misuse by defendants.

Defendants have counterclaimed, seeking a determination that Patent No. 2,-903,736 is valid, is infringed by plaintiff and is enforceable against plaintiff. Defendants also seek appropriate relief by way of injunction and an award of treble damages, attorneys fees and costs.

Defendants' patent, issued September 15, 1959, is for an automatically locking sash balance for removable sash windows. Defendant Osten is the owner of the patent and defendant A.R.B. Window Sales Company holds an exclusive license to make and a non-exclusive license to use and sell the device disclosed in the patent.

Plaintiff's accused device bears Patent No. 3,012,292 issued December 12, 1961, for a removable window with a sash counterbalance locking device. The patent was granted to F. C. Brengman who assigned it to plaintiff.

Vertically sliding sash windows, which have two removable panes or sashes, each of which may be raised or lowered manually, have been in use for many years. For many years prior to the date of the patent in suit, sliding sash windows have been constructed so that they can be removed from the guides in which they slide or so that they can be swung inwardly from their normal vertical position and plane for the purpose of washing, painting, replacement or repair. For many years prior to the patent in suit, sliding sash windows have been counterbalanced by weighted sash balance cords or by springs. Where a sash counterbalance cord or spring is used, the counterbalance cord or spring must be readily disengageable from the sash when the sash is removed from the frame. When the sash is removed from the frame, substantial inconvenience results if the counterbalance cord or spring is permitted to retract to an inaccessible position adjacent the top of the window, as it will do unless some locking means is provided to prevent this when the cord or spring is disengaged from the sash. When the sash is reinserted in the frame some means must be provided to re-engage the sash with the cord or spring and to unlock the cord or spring in order to permit the tension of the balancing spring or weighted sash cord to reapply to the window sash.

Plaintiff's and defendant's devices both have the object of providing a sash spring balance which will automatically lock in its tensioned position upon removal of the sash, regardless of the location at which the sash is removed, and will automatically unlock when the sash is replaced in the window frame, thus enabling the sash to be removed and replaced at any position.

In defendant's Patent No. 2,903,736, the object is achieved by a locking plate which is connected to the balancing spring and is actuated by the balancing spring. The locking plate is rockably mounted on a pivot seated in a lock carrier. The lock carrier slides up and down with the balancing spring within the hollow casing which holds the balancing spring. The locking member is connected to the balancing spring at a location spaced away from the pivot. When the sash is removed from the window frame, the trigger portion of the locking plate is disengaged from the sash catch causing the balancing spring to jerk or rock the locking plate around the pivot causing a sharp edge of the locking plate to dig into the wall of the hollow casing thereby locking the spring sash balance in its tensioned position. When the sash is replaced in the window frame the trigger portion of the locking plate re-engages the sash catch. The weight of the sash causes the locking plate to rock around the pivot so as to withdraw the sharp edge of the locking plate from its locking engagement with the wall of the hollow casing, thus balancing the sash upon the balancing spring.

In plaintiff's Patent No. 3,012,292, the object is achieved by a slide block which is connected to the balancing spring and is actuated by the balancing spring. The slide block slides up and down with the balancing spring within the hollow casing which holds the balancing spring. The slide block is eccentrically connected to the balancing spring at a location spaced away from the longitudinal axis of the slide block. When the sash is removed from the window frame, the slide block is disengaged from the sash plunger causing the balancing spring to jerk or rock the slide block about its fulcrum edge causing a sharp brake portion of the slide block to dig into the wall of the hollow casing thus locking the spring sash balance in its tensioned position. When the sash is replaced in the window frame the slide block is reengaged with the sash plunger. The weight of the sash causes the slide block to rock back to a vertical position disengaging the brake portion of the slide block from the wall of the hollow casing, thus balancing the sash upon the balancing spring.

The major issues before the court are:

1. Is Patent No. 2,903,736 valid?

2. Does plaintiff's device infringe Patent No. 2,903,736?

3. Have defendants violated Sections 1 or 2 of the Sherman Act or committed acts of unfair competition and if so, has plaintiff established the fact of injury?

4. Is defendant Osten guilty of misuse of Patent No. 2,903,-736?

1. Invalidity of defendants' patent.

35 U.S.C.A. § 282, provides that "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

35 U.S.C.A. § 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * "

Both parties have properly characterized the patent in issue as a combination patent. A strict construction is required of combination claims and a high standard of invention is exacted to sustain them. Bobertz v. General Motors Corporation, 228 F.2d 94 (6th Cir., 1955), cert. den. 352 U.S. 824, 77 S.Ct. 32, 1 L.Ed.2d 47 (1956). In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151, 71 S.Ct. 127, 129, 95 L.Ed. 162 (1950) the court (quoting from Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008 [1938]) stated:

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

The evidence establishes and the court finds that:

1. Each element in the patent-in-suit is anticipated in prior art references.

2. The aggregation of the old elements in the patent-in-suit does not produce a new, unobvious and unexpected result nor does the aggregation perform a new and different function or operation.

3. The differences between the subject matter of the patent and the prior art are such that the subject matter would have been obvious at the time the invention was made to a person having ordinary skill in the art.

The patent-in-suit discloses a combination of the following elements:

1. An elongated hollow casing having an elongated aperture therein.

2. A resilient sash balancing member anchored to said casing and disposed therein.

3. A lock carrier reciprocably mounted in the casing.

4. A pivot element attached to the lock carrier.

5. A locking member rockably mounted on the pivot element and connected to the resilient member at a location spaced away from the pivot element, containing a trigger portion and a locking portion.

6. A rocking lever arm on the locking member.

Each of these elements is anticipated in prior art references.

The elongated hollow casing appears in British Patent No. 4,006 issued in 1908, in U.S. Patent No. 2,383,852 issued in 1945 and in U.S. Patent No. 2,837,781 issued in 1958.

The resilient sash balancing member appears in U.S. Patent No. 1,777,997 issued in 1930, in U.S. Patent No. 2,791,-795 issued in 1957 and in U.S. Patent No. 2,837,781 issued in 1958.

The lock carrier and pivot element appear in U.S. Patent No. 2,383,852 issued in 1945; and a lock carrier appears in U.S. Patent No. 2,747,219 issued in 1956 and in U.S. Patent No. 2,791,795 issued in 1957.

The locking member appears in British Patent No. 4,006 issued in 1908, in U.S. Patent No. 2,791,795 issued in 1957 and in U.S. Patent No. 2,837,781 issued in 1958.

The rocking lever arm appears in U.S. Patent No. 2,791,795 issued in 1957.

■■ Of these prior art references only U.S. Patents No. 2,791,795 and No. 2,747,219 were cited in the file of the patent in issue. The statutory presumption of validity is weakened if there is applicable prior art not considered by the patent office. Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911 (6th Cir., 1960), cert. den., 368 U.S. 890, 82 S.Ct. 142, 7 L.Ed.2d 87 (1961); Barrott v. Drake Casket Co., 187 F.Supp. 284 (W.D.Mich.1960), affirmed, 6 Cir., 297 F.2d 934 (1962). All elements of the prior art have a bearing on the question of invention, it being unnecessary that every element be found in one embodiment. Aluminum Company of America v. Sperry Products, supra.

The result produced by the combination of elements in the patent-in-suit does not appear to be new or unexpected, nor does the function appear to be different from the function of prior patents. The patent of G. B. Haas, No. 2,796,630, June 25, 1957, states at column 1, line 18:

"One object of this invention is to provide a spring sash balance for removable double-hung sliding sash windows wherein the sash balance is automatically secured in its attained position with its spring in full tension at the location where the sash is removed, yet wherein the sash may be replaced in any position without having to replace it in its original position from which it was removed, the sash automatically unlocking the sash balance and immediately reapplying the tension of the balancing spring to the sash when the sash is slid in either direction to its original position".

The patent of A. M. Starck et al., No. 2,778,069, January 22, 1957, states at column 1, line 19:

"It is an object of the invention to provide an improved sash balance for use with removable sashes. One feature of the invention relates to an improved construction of the means for locking the sash balance automatically when the sash is moved transversely to remove it from the window frame.

"Another feature of the invention is to provide a sash balance for a removable sash with locking means that are compact, reliable and engageable from either direction when a sash is replaced in the window frame at either a higher or a lower level than that which it occupied when it was disconnected from its sash balance."

The result achieved by the patent in suit, namely, a sash spring balance that will automatically lock in its tensioned

position upon removal of the sash, regardless of the location at which the sash is removed, and will automatically unlock when the sash is replaced in the window frame, does not differ from the result achieved by the aforementioned prior art patents.

Plaintiff's expert witness, Clarence Fishleigh, a graduate of the University of Michigan Engineering School and a consulting engineer of many years experience, testified on direct examination:

"Q  What, if any, function does the device of the patent in suit perform which the devices of the prior art do not perform?

"A  None.

"Q  What new result, if any, is achieved by the patent in suit which is not achieved by the devices of the prior art?

"A  None, in my opinion.

"Q  What advantage, if any, does the device of the patent in suit have over the devices of the prior art?

"A  I would say none."

Defendant's sole expert witness was Donald M. Trout, whose formal college training had been confined to the field of music. Mr. Trout's testimony established no more than that the patent in suit, in comparison to prior patents such as the Haas and Starck patents, may produce a superior device in terms of convenience and economical operation. For example, Trout testified that the patent in suit operates without the use of the auxiliary coil spring connected with the locking member which characterized the Haas Patent No. 2,796,630 and Starck No. 2,778,069, although Mr. Fishleigh pointed out on direct examination that the Haas Patent No. 2,747,219, operates without the use of an auxiliary coil spring.

Mr. Trout also testified that the patent in suit may be more quiet in its operation than prior patents; and that the patent in suit avoids producing visible dents in the outside wall of the spring casing as did Haas patent No. 2,747,219. In-stead the Osten Patent produces dents in the rear wall of the spring casing.

However, as was stated in Bede v. Baker & English, Inc., 274 F.2d 833, 839, (6th Cir., 1960):

"The combination of old parts or elements, in order to constitute a patentable invention, must perform or produce a new or different function or operation than that theretofore performed or produced by them; it is not sufficient that the combination be superior to what went before in producing a more convenient and more economical mechanism."

A result similar to that of the patent in suit was accomplished by plaintiff's exhibit 19, a model, by which Mr. Fishleigh illustrated his testimony. The model represented basically British Patent No. 4006, but also employed features of the Starck Patent No. 2,778,069 and Haas Patent No. 2,747,219. This exhibit strongly suggests that the differences between the subject matter of the patent in suit and the prior art are such that the device would have been obvious at the time the invention was made to a person having ordinary skill in the art.

The following language from Associated Plastics Companies v. Gits Molding Corporation, 182 F.2d 1000, 1005 (7th Cir., 1950) was cited with approval by the Court of Appeals for the Sixth Circuit in Bobertz v. General Motors Corporation, 228 F.2d 94 (6th Cir., 1955) cert. den. 352 U.S. 824, 77 S.Ct. 32, 1 L.Ed.2d 47 (1956):

"A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display invention, more ingenuity than the work of a mechanic skilled in the art. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee. The primary purpose of our patent system is not reward of the individual but the advancement of the arts and sciences.

Its inducement is directed to disclosure of advances in knowledge which will be beneficial to society; it is not a certificate of merit, but an incentive to disclosure."

In Barrott v. Drake Casket Co., 187 F.Supp. 284, 289, (W.D.Mich.1960) affirmed, 6 Cir., 297 F.2d 934, Judge Starr (quoting from Stabler v. Bright Leaf Industries, Inc., 261 F.2d 383 (5th Cir., 1959) stated:

"Inventions require close scrutiny lest patent monopolies be granted to 'each slight technological advance in an art' merely because it is useful."

█ The court is of the opinion and finds that the Osten combination does not constitute a patentable invention for the reason that all of its elements are anticipated in prior art references; that the combination does not produce a new result or perform a new function and that the differences between the subject matter of the patent and the prior art are such that the subject matter would have been obvious at the time the invention was made to a person having ordinary skill in the art.

2. Infringement of defendant's patent.

█ The burden of proof is upon the one asserting infringement to establish infringement by a preponderance of the evidence. Corning Glass Works v. Federal Glass Company, 239 F.2d 674 (6th Cir., 1956). An infringement of a combination patent occurs only through a combination comprised of every one of the elements of the patent or their mechanical equivalent. Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911 (6th Cir., 1960); Sears, Roebuck & Co. v. Minnesota Mining & Mfg. Co., 249 F.2d 66 (4th Cir., 1957), cert. den. 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958). The omission of any element, or the substitution of another not a mere mechanical equivalent to accomplish the same result averts infringement. Bishop & Babcock Mfg. Co. v. Sears, Roebuck & Co., 125 F.Supp. 528 (N.D.Ohio, 1954), affirmed 6 Cir.,

232 F.2d 116. Where the elements of a patent are found in various prior patents in the same art, the patent will be construed strictly according to its terms. National Latex Products Co. v. Sun Rubber, 274 F.2d 224 (6th Cir., 1959), cert. den. 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed. 2d 1022 (1960).

An essential element of the patent in suit is a lock carrier reciprocably mounted in the hollow casing, having a pivot element thereon, and having a locking member rockably mounted on the pivot element. Without the lock carrier the patent in suit would be inoperative as there could be no pivoting or rocking of the locking plate.

There is no lock carrier in plaintiff's device. The locking plate in plaintiff's device does not rock relative to any lock carrier. The rocking action of the locking member is caused by the eccentric mounting of the locking member, causing it to pivot about its own fulcrum edge. The omission of the essential lock carrier element of the defendant's patent requires the finding of non-infringement on the part of the plaintiff.

3. Sherman Act and unfair competition.

Plaintiff's second claim is for triple damages resulting from alleged violations of Sections 1 and 2 of the Sherman Act. Count three of plaintiff's amended complaint alleges acts of unfair competition. Plaintiff alleges, in substance, that defendants entered into agreements with R.O.W. Sales Company of Ferndale, Michigan, (a competitor of Malta) and with Formetal, Inc., of Oak Harbor, Ohio (a supplier of R.O.W. and a past and prospective future supplier to defendant), pursuant to which R.O.W., Formetal and defendants agreed to share the cost of any patent litigation brought by any of them against competitors, including plaintiff. Plaintiff claims that these agreements were entered into for the purpose of eliminating or reducing competition in the manufacture and sale of automatic locking sash balances. Plaintiff also claims that a suit was instituted by defendants, without legal justi-

fication, against plaintiff's Chicago distributor, Muench Sash & Door Company, and that defendants have notified competitors of the existence and purpose of the litigation fund for the purpose of intimidating competitors and reducing competitive activity.

As a result of this conduct, plaintiff alleges as damages a "disruption and loss of business", "great and undue expense" and "other irreparable injury", and that as a result of the suit against Muench, plaintiff experienced lost sales in the Chicago area and substantial legal and administrative expense.

The testimony establishes and the court finds the following facts:

1. Defendant A.R.B. Window Sales Co. is a competitor of R.O.W. Window Sales Co. and of plaintiff Malta Manufacturing Co.

2. Formetal, Inc. is a supplier of R.O.W. Window Sales Co. and a past and prospective supplier of defendant A.R.B. Window Sales Co.

3. In 1961, defendants entered into an agreement with R.O.W. Window Sales Co. and Formetal, Inc. to share the cost of patent litigation involving the patents of any one of them.

4. Mr. Willis Bugbee is the attorney for defendants, for R.O.W. Window Sales Co. and for Formetal, Inc.

5. Shortly after the agreement to share the cost of patent litigation, defendant filed in the United States District Court in Chicago a patent infringement action under the patent in suit (No. 2,903,736) against Muench Sash and Door Co. of Chicago, a customer of Malta Manufacturing Co. and a separate action against Zengers, Inc. a competitor of defendant.

6. The agreement between A.R.B. Window Sales Co., R.O.W. Window Sales Co. and Formetal to share the cost of patent litigation became known to competitors.

Assuming, *arguendo*, that an unlawful conspiracy is established, it is defendants' contention that the fact of damage has not been established by plaintiff.

Under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, a person claiming damages must show that he has been "injured in his business or property by reason of anything forbidden in the antitrust laws." The party claiming damage must establish first that some damage was actually suffered, and if so, the amount of such damage. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Alexander v. Texas Co., 165 F.Supp. 53, 56 (W.D.La. 1958). Courts have drawn a distinction between the quantum of proof necessary to show the fact as distinguished from the amount of damage, the burden as to the fact of damage being the more stringent one. Flintkote Company v. Lysfjord, 246 F.2d 368, 392 (9th Cir., 1957) cert. den. 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); Stearns v. Tinker & Rasor, 252 F.2d 589 (9th Cir., 1957). The fact of injury must be established with reasonable certainty. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931); E. V. Prentice Mach. Co. v. Associated Plywood Mills, 252 F.2d 473 (9th Cir., 1958) cert. den. 356 U.S. 951, 78 S.Ct. 917, 2 L.Ed.2d 844 (1958); Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416, 426 (10th Cir., 1952) cert. den. 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952); Timberlake, The Legal Injury Requirements and Proof of Damages in Treble Damage Actions under the Antitrust Laws, 30 Geo. Wash.L.Rev. 231 (1961). However, the exact amount of damage need not be proven with certainty so long as the damages are not speculative or conjectural. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922); Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416 (10th Cir., 1952).

Plaintiff's proposed findings of fact, submitted after trial, do not include a finding that it suffered injury as the result of an illegal conspiracy nor does

the evidence justify such a finding. The only evidence as to the fact of damage consisted of the testimony of James Grant Boden, President of Malta. Mr. Boden testified that "Cincinnati [Cincinnati Sash and Door Co.] was a customer of considerable size, using basically equipment which we were purchasing from the A.R.B. Company, and in 1956, we began to get involved in threats of suit by A.R.B. and as a result of this controversy and our development of another device which has nothing to do particularly with this suit, A.R.B. elected to cancel their franchise with us and then made contact directly with Cincinnati and they then became customers of A.R.B. and we lost them as customers. They purchased their wood parts elsewhere and their equipment from A.R.B. and that was the end of our relationship, sometime in 1957."

█ The court finds that the alleged damage suffered as a result of the loss of the Cincinnati Sash & Door business was not the proximate result of the alleged illegal conduct on the part of defendants because this loss occurred before the alleged conspiracy was effected.

Plaintiff also asserts as damages all costs and attorney fees incurred by it as a result of the alleged conspiracy. Mr. Boden testified that Muench Sash & Door Co. was a distributor of Malta products and that Malta was called upon by Muench to assume all legal fees incurred by Muench in defending against patent litigation brought by defendants.

█ There is precedent for regarding attorney fees incident to defending a patent infringement action as an element of treble damages when a patentee enforces his patent rights for the purpose of furthering unlawful monopolistic activities. Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416, 425 (10th Cir., 1952); Clapper v. Original Tractor Cab Co., 270 F.2d 616, 624 (7th Cir., 1959) cert. den. 361 U.S. 967, 80 S.Ct. 588, 4 L.Ed.2d 547 (1960). But where a patentee enforces his rights for apparently lawful purposes the cost of defense does not become an element of damages under the Clayton Act. Straus v. Victor Talking Mach. Co., 297 F. 791, (2nd Cir., 1924).

█ In the instant case the suits against Meunch and Malta were brought for the lawful purpose of enforcing Osten's patent. I find that defendant reasonably believed that plaintiff might have been infringing his patent rights notwithstanding the possible illegality of defendant's agreement with R.O.W. and Formetal.

Moreover, there is no history of monopolization on the part of the patentee preceding the patent litigation as appeared in Kobe and Clapper. In the instant case, competition in the removable sash industry appears to be vigorous and there is no evidence that defendant gained an unlawful position of dominance in the relevant market.

Plaintiff cites Dairy Foods, Inc. v. Dairy Maid Products Co-op, 297 F.2d 805 (7th Cir., 1961), a patent infringement action in which the defendant asserted a counterclaim to recover treble damages from plaintiff and two additional counterdefendants for injury caused by antitrust violations. The only injury alleged there was the lost time and money expended in defending the suit and investigating the patent. The Seventh Circuit held that a cause of action for treble damages was stated.

This case may be distinguished from the instant case in that the court, in Dairy Foods, on motion to dismiss, assumed that the patentee brought suit to further unlawful monopolistic activities since defendant in that case alleged in his counterclaim that he was forced either to cease competition, to compete under a discriminatory license or to defend the patent litigation. Defendant's business would have been injured if any one of these assertions were established.

█ In contrast to Dairy Foods, the issue in the instant case is presented after all of the proofs have been submitted. I find that the evidence fails to

establish that the suits against Muench and Malta were brought in furtherance of an unlawful conspiracy.

In addition, the court finds from the apparent similarity of the patent in suit and the accused device that defendants were not guilty of bad faith, or inequitable or unconscionable conduct in the instigation of the action against Muench or in the counterclaim in this action.

▮ Even assuming that the proofs established antitrust violations sufficient to invoke the rule of Kobe, Clapper and Dairy Foods, the court believes the contrary rule of Straus v. Victor Talking Machine Co., 297 F. 791 (2nd Cir., 1924) to be preferable and holds that expenses of litigation are not recoverable as an element of triple damages. See Notes, 13 Syracuse Law Rev. 589 (1962); 47 Iowa Law Rev. 1088 (1962).

In the Straus case the court stated, 297 F. p. 798:

"Free access to the courts must neither be denied nor penalized. Of this principle, the case at bar is a perfect illustration. When the suit of Victor [Talking Mach. Co.] v. Straus [Strauss] was brought, the most which can be said against Victor Company is that the questions litigated were debatable. The court of last resort to which an appeal could be taken without permission by way of certiorari had declared in 230 Fed. 449, 144 C.C.A. 591, that Victor Company was right. The Supreme Court on certiorari reversed * * *. In such circumstances, to say that a suit brought to determine rights may be part of a scheme to violate statute law, and, if so, that the suitor may be subject to respond in damages, is to announce that he who seeks the judgment of the courts does so at his peril."

As the court further stated, p. 799:

" * * * it would be a negation of the principle and right of free access to the courts to hold that the submission of rights to judicial determination involved a dangerous gamble which might subject the loser to heavy damage."

▮ It is the opinion of the court that any legal basis for an attorney fee allowance in the successful defense of patent infringement actions should emanate from and find its source in 35 U.S.C.A. § 285.[1]

▮ In conclusion, the court finds that any damage resulting from the loss of Cincinnati's business was not a proximate result of the alleged conspiracy, and that the expenses of defending the Muench and the instant litigation are not recoverable as an element of treble damages under the Clayton Act for the reason that the litigation was not clearly in furtherance of unlawful monopolistic activities and its costs are not recoverable under the Patent Codification Act because defendants were not guilty of bad faith, or inequitable or unconscionable conduct in the institution of such litigation.

4. Patent misuse.

Plaintiff in its amended complaint asks the court to declare defendant's Patent No. 2,903,736, unenforceable against plaintiff by reason of defendant's misuse of the patent. Plaintiff claims that defendant's violation of the antitrust laws constitutes the misuse of the patent, however, the failure of plaintiff's proof in the antitrust charge requires the claim of patent misuse to fail as well. Moreover, the finding of invalidity of the patent in suit and noninfringement renders it unnecessary to explore further the claim of misuse.

The parties may present orders in conformity with this opinion.

---

1. "The court in exceptional cases may award reasonable attorney fees to the prevailing party."