**AUTOMATED BUILDING COMPONENTS, INC. substituted for Gang-Nails Sales Co., Inc., Plaintiff,**

v.

**HYDRO-AIR ENGINEERING, INC., Defendant.**

No. 61 C 160(3).

United States District Court
E. D. Missouri, E. D.

Dec. 14, 1964.

Kingsland, Rogers, Ezell & Robbins, Clayton, Mo., Robert E. LeBlanc, Diggins & LeBlanc, Washington, D. C., for plaintiff.

Stuart N. Senniger, Koenig, Pope, Senniger & Powers, St. Louis, Mo., for defendant.

248

REGAN, District Judge.

This action was instituted on May 11, 1961, by plaintiff, Gang-Nails Sales Co., Inc. Subsequently, Automated Building Components, Inc., was substituted as plaintiff herein. There is no question in the case at bar that the substituted plaintiff is the assignee of the entire interest of U. S. Letters Patent No. 2,-877,520 hereinafter referred to as the Jureit Patent. Plaintiff seeks an adjudication that Claims 1, 3, and 4 of the Jureit Patent are valid and have been infringed by the defendant. By admission Claim 2 of the Jureit Patent is not in issue at the case at bar. It further seeks a permanent injunction against the alleged infringement and further infringement by defendant of said Patent. The plaintiff also seeks the assessment of damages by way of an accounting for said infringement and costs.

Defendant denies the infringement of any valid claim of the Jureit Patent and prays that the Claims be held to be invalid in law; that the Complaint be dismissed; that the sought Counterclaims be granted. By way of counterclaim defendant prays for a declaration that it has in no way infringed the Jureit Patent; that said Patent is invalid and of no force and effect; that plaintiff has misused said Patent and violated the Anti-Trust laws of the United States thereby entitling defendant to treble damages. Defendant claims damage by the plaintiff in substantially lessening competition in the sale of unpatented products and by denying defendant the right to sell unpatented products to plaintiff's licensees.

This Court has jurisdiction of the parties and the subject matter of this litigation.

Section 1338 of Title 28 United States Code grants this Court its initial jurisdiction in this matter. Section 1338(a) grants this Court original jurisdiction of any civil case arising under any Act of Congress relating to patents. Section 1338(b) grants original jurisdiction to this Court of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the patent laws.

Section 281 of Title 35 U.S.C. provides the plaintiff with his remedy by civil action for the alleged infringement of the Jureit Patent.

Sections 2201 and 2202 of Title 28 U.S.C. create the remedy and provide for further relief which is the basis of defendant's Declaratory Judgment counterclaim. Plaintiff admits that a justiciable controversy exists between plaintiff and defendant with respect to the validity and infringement of the Jureit Patent by the activities of the defendant.

Section 15 of the U.S.C. Title 15 grants this Court jurisdiction over a person who has been injured in his business or property by reason of anything forbidden in the anti-trust laws and provides for the recovery threefold of the damages sustained by him, the cost of the suit, including a reasonable attorneys fee.

■ Before dealing specifically with the validity of Claims 1, 3 and 4 of the Jureit Patent, it is well to note that there seems to be some controversy concerning whether or not the validity of these Claims has been determined in other judicial proceedings or whether validity was admitted in the settlement of one controversy. Of course, neither would be binding upon this Court, but after reviewing the Agreement entered into between Gang-Nails, Inc. and Gator Lock, Inc., said Agreement being Plaintiff's Exhibit 37, it is very apparent that validity was not admitted therein. In the case in the United States District Court for the District of Columbia being Cause No. 1843–59 the Court pointed out that the validity of the Jureit Patent was res judicata as between the parties by reason of a prior judgment rendered in the United States District Court for the Southern District of Florida, Civil Action No. 9142–M. There is nothing in the record to indicate that this latter judgment determined the validity of any of the claims of the Jureit Patent. Plaintiff's Exhibit 40 is the Civil Action No. 1843–59. Therefore, the evidence does

not reveal a prior proceeding wherein the validity of this Patent was actually decided, and therefore the Court can only conclude that the validity of Claims 1, 3 and 4 of the Jureit Patent must be decided in this cause.

At the very outset it is important to set forth the Claims of the Jureit Patent involved in this suit. The patent Claims are in evidence as Plaintiff's Exhibit 1.

Claim 1. "A structural joint for transmitting a structural load consisting of a pair of structurally butted wooden members, at least one metal plate having substantially parallel faces structurally joining said members, at least three spaced substantially parallel rows of elongated teeth struck from said plate to leave three spaced rows of slots, said teeth having a width on the order of the thickness of said plate so as to be slender and nail-like in appearance from all directions and having a length equal to at least six times the thickness of said plate, a first pair of substantially parallel sides of each said tooth joining said first pair of sides, said teeth terminating in pointed ends and extending away from said plate substantially normal thereto, and imbedded in said wooden members."

Claim 2. By admission Claim 2 is not in issue in the case at bar.

Claim 3. "A structural joint as set out in claim 1 wherein said wooden members are structurally joined by a pair of said plates on opposed sides thereof, said teeth from said plates being imbedded in said wooden members and the teeth of said opposed plates extending towards one another."

Claim 4. "A structural joint as set out in claim 1 wherein said teeth have a length equal to approximately 6–17 times the thickness of said plate and a width approximately 1.4 times the thickness of said plate."

Just what does the Jureit Patent claim?

Claim 1 claims a structural joint for transmitting a structural load. It consists of two elements 1) a pair of structurally butted wooden members and 2) at least one metal plate with specifications concerning its faces, the number of rows of teeth and the teeth itself.

Claim 3 claims a structural joint consisting of two plates and two wooden members. The characteristics of the elements are the same as set forth in Claim 1.

Claim 4 claims a structural joint as set forth in Claim 1 but sets forth approximate measurements for the length and width of the teeth.

It can readily be seen that the alleged new idea is a structural joint for transmitting a structural load, not the individual component parts that make up the assembly but the assembly itself. Although the individual component part, the connector plate, is alleged or claimed to contain innovations, the plate in and of itself is unpatented and is but one part of the assembly that is the subject of the Claims. In other words, the Claims as set forth claim the invention of a structural joint; that is, the patent claims do not claim the plate in and by itself as being the invention but the invention relates to the assembly of component parts—the entire structural joint. The plate, if viewed by itself, is not the subject of the Jureit Patent and therefore is not patented under the Jureit Patent.

This patent is presumed to be valid. 35 U.S.C. § 282. However, this presumption is not irrebuttable and may be overcome. The burden of establishing invalidity of the patent rests on the party asserting it. 35 U.S.C. § 282. The issue thus arises as to whether or not the defendant has overcome this presumption thereby establishing the invalidity of the Jureit Patent claims at bar.

■ The Defendant contends that each of these claims is invalid because it does not meet the conditions for patentability set forth in § 102(a) and (b) of Title 35 U.S.C., in that each Claim was known by others in this country, and patented and described in a printed

publication in this or a foreign country before the invention thereof by Mr. Jureit and in that the subject matter of these claims was patented and described in a printed publication in this or a foreign country more than one year prior to September 12, 1956, the filing date of the application for this Jureit Patent.

Defendant also contends that each of these claims is invalid because it does not meet the conditions for patentability set forth in § 103 of Title 35, U.S.C., in that the differences between the subject matter of these claims and the prior art are such that the subject matter as a whole would have been obvious, at the time the alleged invention was made, to a person having ordinary skill in the art to which the subject matter pertains.

Defendant further claims that each of these claims is invalid for want of invention inasmuch as they define a mere aggregation of old elements which perform or produce no new or different function or operation than that theretofore performed and produced by them. Citing Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (6th Cir.) and Selmix Dispensers Inc. v. Multiplex Faucet Co., 8 Cir., 277 F.2d 884, and other cases.

■■ Each claim will be considered separately as each claim of a patent is a separate grant or invention and can either stand or fall by itself. Of course, this Court cannot consider the validity of Claim 2 of the Jureit Patent as that claim is not in issue at bar. Southwest Industrial Products v. Ezee Mfg. Co., 116 U.S.P.Q. 362, United Shoe Machinery Corp. v. Industrial Shoe Machinery Corp., 1 Cir., 335 F.2d 577 and Bain v. M. A. Hanna Co., 6 Cir., 331 F.2d 974.

We will first look to see if the Claims involved in this litigation were anticipated by the prior art. However, at the outset, a definition must be given to the term "prior art" to see if the numerous patents in evidence constitute such. Plaintiff's basic test as to what constitutes prior art appears to center around what it calls a structural load bearing device. This term "structural" has been given various meanings based on evidence by both sides. Dean Fischer testified that the term "structure" is a very broad term whereas "building structure" is the narrow term. Structure, according to Dean Fischer, and this Court so finds, includes almost anything that is subjected to external forces. Barrels and boxes are structures. Withdrawal resistance is not the determining factor. The possible lower withdrawal resistance of some of the plates, i. e., Kalischer, does not take the patent out of the category of structural joints. We conclude that withdrawal resistance is a by-product of the plate and the question of whether or not a joint is a structural joint does not depend on same.

It might be mentioned that the Jureit claims do not mention withdrawal resistance nor does the specification suggest what is sufficient or insufficient withdrawal resistance of a connector plate from the wood.

■ It should be noted that in searching for a definition as to what constitutes prior art, not only can the same art be considered but kindred arts; however, this Court finds that the following patents disclose structural joints and therefore can be considered as prior art in determining whether or not such prior art anticipates or makes obvious the Jureit claims.

The first patent we will consider is No. 20,400 known as the Kalischer's British patent. It claims "The fastening consisting of a metal strip (a) having formed at each end bent down points (b), serving as nails, their ends remaining connected with the strip (a), for the purpose of fixing lids to boxes, and uniting separate pieces of wood, or the sides of cracks, securing bungs in casks, and other purposes of the like kind, substantially as described and illustrated." PX 58.

There is no doubt that the Kalischer patent anticipates or at least teaches the claims of the Jureit Patent. The metal plates have three parallel rows of elongated teeth struck from the plate leaving three spaced rows of slots. These teeth are referred to as nails and are described as having pointed ends. Moreover, the teeth have a length at least six times the plate thickness, and have a first pair of parallel sides and a second pair of parallel sides joining the first pair. On illustration of the usage of this patent is illustrated in Figure 3 as stated in the Specification, " * * * the improved fastening can be easily used for uniting together two parts of the wood which may have been split or broken, the points at one end of the fastening being driven into the wood at one side of the crack, and those at the other end into the other side of the crack." It can readily be seen that in this usage and in the usage illustrated by Figures 3 & 4 the teeth of connectors are embedded in abutting wooden members of a box and a barrel to secure these members together without the use of any supplemental means. There can be little doubt that the assembly described in Claim 1 of the Jureit Patent was anticipated or taught by the assembly disclosed in the Kalischer patent.

Even if the Kalischer plate were construed not to have teeth having a width on the order of the thickness of said plate, there is substantial testimony in this case tending to prove that the variation of the width of the teeth for whatever purpose is a matter of mechanical skill and certainly does not involve invention.

In view of what the Kalischer patent teaches as to the form of the plate and of structures having a joint made with such plates, this Court finds that it was obvious to one having ordinary skill in this art in 1956 to use a second plate on the opposite side of abutting wooden members as additionally required in Jureit dependent claim 3, or to make the width of each tooth 1.4 times the thickness of the plate as required in Jureit's claim 4.

There is no doubt that there are many patents in evidence which anticipate or clearly suggest the claimed Jureit joint. Among these relevant prior art patents are the Vogel, No. 705,626, being Defendant's Exhibit LL-1; the Mills, No. 1,075,845, being Plaintiff's Exhibit No. 54; the Berthaud French, No. 929,932, being Defendant's Exhibit No. II; and the Elmendorf, No. 1,712,493, being Plaintiff's Exhibit 55. The Berthaud Résumé says "This device permits simple and economical jointings to be gotten. By not causing the weakening of the wood, the resistance of the pieces is completely used. The risks of splitting are not to be feared, as a result of the small number of necessary needles, and the hooping of the wood resulting from the presence of plates." There is no doubt that the Berthaud patent anticipates or makes obvious the Jureit claims. Berthaud discloses a roof truss with joints formed by abutting wooden members secured together with nailing plates having two rows of long thin nails or teeth which are welded to the plate rather than being punched from the metal plate itself. It certainly does not take inventive genius to make joints with plates differing from the French connector plates only in that Jureit plates have nails struck out from the plate instead of being welded to the plate as shown by Berthaud. In addition, the width and length of the teeth demonstrated in the Berthaud plate meet the specifications of Claim 1 of the Jureit Patent. It is obvious that Claim 2 of the Jureit Patent is anticipated or taught by the Berthaud patent. Claim 3 once again only involves mere mechanical skill and not invention in comparison of it with the Berthaud patent. It appears to be rather unnecessary to go on with such great detail but merely to point out as to the other patents mentioned that Vogel shows a plate with three rows of pointed teeth punched out of a metal plate for joining the corners of boxes, fastening on lids, securing bungs, etc. The Mills patent

discloses the possibility of abutting wooden members secured by metal plates with four parallel rows of struck-out metal teeth. It would require no more than ordinary skill of an engineer or mechanic to vary the shapes of the teeth shown in these two patents so that they conform to the teeth illustrated in Claims 1 and 4 of the Jureit Patent. The Elmendorf patent illustrates in Figures 6 and 7 a strip of metal with a single row of elongated struck-out teeth which are used to join together wooden boxes. These prior-art teeth measure the same identical width and length as those shown in Figure 1 of the Jureit Patent in issue.

Of special interest is the Sanford patent No. 2,827,676 being Plaintiff's Exhibit 18, and the Blaski patent No. 2,-369,525, being Plaintiff's Exhibit 15. These patents teach the claimed Jureit joint. Without going into great detail each feature required in Jureit's claim 1 and 3 are present in Sanford's joint except that Sanford's teeth have a relatively wide base and are triangular while Jureit's teeth have a shape as described in the claims. Blaski's joints are similar to Sanford's except the length of the teeth do not meet the Jureit specifications. However, any engineer or mechanic having ordinary skill in this art would not require inventive genius to make the variations in the teeth necessary to conform to the Jureit claims.

Plaintiff further asserts that the subject matter of the Jureit claims was not obvious to one skilled in the art because the Blaski and Sanford joints are not held together solely by connector plates, and that some supplementary means is additionally employed by Sanford and Blaski, whereas Jureit's joints are held together solely by the connector plates. In this regard, plaintiff contends that the amount of withdrawal resistance of the plate teeth from the wood is critical and that the Sanford and Blaski plates have insufficient withdrawal resistance. The fact that the withdrawal resistance has been combined in one plate without supplemental means of support in no way

involves invention. It was not only obvious to one skilled in the art in 1956 and within the ordinary skill of a worker in the nailing art to modify nail-like fasteners to vary withdrawal resistance but was actually demonstrated in prior art patents, i. e., Kalischer and Berthaud. Without going into what is obvious to this Court but by way of illustration it certainly does not take inventive genius to make joints with plates differing from the French connector plates only in that the Jureit plates have nails struck out from the plate instead of being welded to the plate as shown by Berthaud.

This Court finds that substantial evidence has been introduced attacking the validity of the Jureit claims and that defendant has overcome the presumption of validity by showing that the subject matter of Jureit's Claims 1, 3, and 4 as a whole was obvious, at the time the alleged invention occurred, to a person having ordinary skill in the art to which the Claims pertain.

In view of what has just been stated, we deem it unnecessary to consider whether there was infringement.

As this Court has declared that Claims 1, 3 and 4 of the Jureit Patent are invalid and of no force and effect it is not necessary to consider whether plaintiff's alleged restrictive and licensing practices and business policies constitute misuse of plaintiff's patent thereby rendering it unenforceable. Larsen Products Corp. v. Perfect Paint Products, Inc., D.C., 191 F.Supp. 303.

However, we must consider whether or not the alleged misuse independently violates Sections 1, 2, 3, and 14 of Title 15, U.S.C. Recovery is sought under the provisions of 15 U.S.C. § 15.

Although defendant contends that regardless of whether or not damages are awarded to defendant by reason of a violation of the anti-trust laws by plaintiff, this Court could still find that plaintiff's patent is unenforceable because of such violation, to do so would be academic. We therefore proceed to a consideration of whether or not defendant

has been damaged by plaintiff's alleged violation of the anti-trust laws. Therefore defendant's anti-trust claim will be dismissed unless defendant proves that it has been damaged by such violation.

Defendant must show that plaintiff has violated the anti-trust laws, injury damaging defendant, and a proximate causal relationship between the anti-trust violation and its injury or damage. This Court does not feel that the defendant has established the fact of damages resulting from an antitrust violation so we will therefore consider, however, only for the purpose of discussing the fact of damage, that plaintiff's activities constitute a violation of the anti-trust law provisions mentioned herein.

The Court in Malta Manufacturing Company v. Osten, 215 F.Supp. 114 (D.C. E.D.Mich., S.Div.1963) speaks of damage and says at page 121:

"Under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, a person claiming damages must show that he has been 'injured in his business or property by reason of anything forbidden in the antitrust laws.' The party claiming damage must establish first that some damage was actually suffered, and if so, the amount of such damage. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Alexander v. Texas Co., 165 F.Supp. 53, 56 (W.D.La. 1958). Courts have drawn a distinction between the quantum of proof necessary to show the fact as distinguished from the amount of damage, the burden as to the fact of damage being the more stringent one. Flintkote Company v. Lysfjord, 246 F.2d 368, 392 (9th Cir., 1957) cert. den. 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); Stearns v. Tinker & Rasor, 252 F. 2d 589 (9th Cir., 1957). The fact of injury must be established with reasonable certainty. Story Parchment Co. v. Paterson Parchment Paper Co., * * *; E. V. Prentice Mach. Co. v. Associated Plywood

Mills, 252 F.2d 473 (9th Cir., 1958) cert. den. 356 U.S. 951, 78 S.Ct. 917, 2 L.Ed.2d 844 (1958); Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416, 426 (10th Cir., 1952) cert. den. 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952); Timberlake, The Legal Injury Requirements and Proof of Damages in Treble Damage Actions under the Antitrust Laws, 30 Geo. Wash.L.Rev. 231 (1961). * * * "

In Talon, Inc. v. Union Slide Fastener, Inc., 9 Cir., 266 F.2d 731, the Court said at page 736:

"In addition to establishing that Talon has violated the anti-trust laws, Union before being entitled to award of damages must establish that Talon's violations of the antitrust laws were a proximate cause of injury to it, and must also prove the extent of that injury. As stated by this Court in Flintkote Company v. Lysfjord, 9 Cir., 1957, 246 F.2d 368, at page 392, certiorari denied 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46: 'We take it that the controlling rule today in seeking damages for loss of profits in antitrust cases is that the plaintiff is required to establish with reasonable probability the existence of some causal connection between defendant's wrongful act and some loss of anticipated revenue.' If union had established with reasonable probability the causal connection between the unlawful acts of Talon and the resultant injury to Union in its property or business, the district court, in the absence of evidence which would have established the amount or extent of damage with reasonable probability, could have made a just and reasonable estimate of damage based on relevant data and could have rendered its verdict accordingly. Bigelow v. R. K. O. Radio Pictures, Inc., 1945, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652. The distinction then is 'between the quantum of proof necessary to show the *fact* as distinguished from the

*amount* of damage.' Flintkote Company v. Lysfjord, supra.

"As stated by the Supreme Court in Story Parchment Co. v. Paterson Parchment Paper Co., 1930, 282 U.S. 555, at page 562, 51 S.Ct. 248, at page 250, 75 L.Ed. 544: ' * * * there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount. * * * ' "

The guidelines then are relatively clear. The defendant must establish the fact of damage with reasonable certainty and must establish with reasonable probability the causal connection between the assumed wrongful acts of plaintiff and the fact of damage.

Defendant contends that since in excess of 110 customer-licensees of plaintiff have been and are forced, by contract, to purchase unpatented connector plates from plaintiff, they are at the same time compelled not to purchase unpatented connector plates from defendant. This contention is not supported by the record because the defendant has not shown with reasonable certainty and probability that its prospective market for sales of unpatented connector plates has been effectively reduced and restricted by the customers who have assumedly been removed from the arena of competition and brought under compulsion to purchase from plaintiff. There is nothing in the record to show that defendant could sell its connector plates to plaintiff's licensee-customers. Defendant in this regard is merely speculating. The evidence establishes seven instances in which defendant sought to sell its connector plate to licensee-customers of plaintiff, that this patent infringement suit was discussed and that defendant was refused any orders. However, this Court finds that this evidence does not establish with reasonable probability that action of the plaintiff was the proximate cause of the refusal of these seven licensee-customers of plaintiff to purchase defendant's connector plates. There is no evidence in the record that defendant under any circumstances could have made sales to plaintiff's licensee-customers. Defendant is only speculating when it says it could have unquestionably made sales to at least some of these customers.

The discussion of this patent infringement suit with the seven licensee-customers of plaintiff is meaningless in establishing the fact of damage. All this Court knows is that such a discussion was held. We can only speculate as to its ramifications.

The record reveals that defendant was unable to obtain loans for necessary business capital to expand its operations but the record does not reveal why these loans were refused. Although Mohlenpah testified that he found it necessary to discuss this patent suit with the banks he approached for a loan and the Small Business Administration, it is once again mere speculation to conclude that these loans were refused as a proximate result of any acts of plaintiff which assumedly violate the anti-trust laws.

Although Mohlenpah testified that defendant had a $30,000 loss during the two year period from March 31, 1961, to March 31, 1963, the record does not indicate that this loss was at least partially attributable to defendant's foreclosure from selling plates to plaintiff's licensee-customers.

Defendant has not established the fact of damages resulting from an anti-trust violation.

Wherefore, it is ordered that Claims 1, 3 and 4 of U. S. Letters Patent No. 2,877,520, referred to as the Jureit Patent, be and are hereby declared to be

invalid in law and of no force and effect, that plaintiff's Complaint be and is hereby dismissed with Costs of this suit assessed against plaintiff, and that defendant's counterclaim for alleged violation of the anti-trust laws of the United States by plaintiff be and is hereby dismissed.